# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| DEANDRE JEROD COTHRAN<br><br>Plaintiff,<br><br>v.<br><br>JAMES RUSSELL,<br><br>Defendant. | No. 2:17-cv-04012 NKL |

## ORDER

This case concerns whether defendant James Russell's shooting of pepper spray through a cell door's food port, purportedly without warning, constituted excessive force in violation of the Eighth Amendment to the United States Constitution. Defendant moves pursuant to Federal Rule of Civil Procedure 702 to strike the expert report and opinion procured by plaintiff DeAndre Jerod Cothran on the ground that the opinion is inadmissible. For the reasons discussed below, the Court denies the motion to strike.

**I.   BACKGROUND**

On April 24, 2016, Mr. Cothran was sharing a cell in the Administrative Segregation Unit of the Western Missouri Correctional Center ("WMCC"), part of the Missouri Department of Corrections ("DOC"), with Dywon Newell. Mr. Russell was the correctional officer on duty in the Administrative Segregation unit. Mr. Newell tried to get Mr. Russell's attention. Mr. Russell claims that Mr. Newell either hit or kicked the cell door. Mr. Russell then opened the cell door's food port and, without warning, directed a burst of pepper spray at Mr. Newell and at Mr. Cothran. The parties dispute the manner in which Mr. Russell pepper-sprayed Mr. Cothran and whether it

was done in a manner consistent with applicable policy and the constitutional prohibition against excessive force.

The report of Richard Lichten, Mr. Cothran's designated expert, contains two opinions:

**<u>Opinion #1</u>**

Lieutenant Russell's use of pepper spray upon the plaintiff as well as offender Newell was:
- Objectively unreasonable,
- Excessive force,
- An overreaction,
- Against the Missouri Department of Corrections - Use of Force, Use of Pepper Spray Guidelines.

This is due to:

- No one's safety was in immediate danger at the time the pepper spray was used,
- The security of the prison was not in danger at the time the pepper spray was used,
- No advisement/warning was given prior to the use of force,
- Even without Lieutenant Russell finding out why the cell door was being kicked (possible medical emergency for example), he had made up his mind to use pepper spray before he arrived at the cell,
- Lieutenant Russell had plenty of time to attempt to de-escalate the situation,
- The evidence showing Lieutenant Russell shot a two to three second burst of pepper spray and not the "short burst" (less than a second) as reported,
- The plaintiff received a direct, considerable dose of pepper spray, not the residual exposure as reported,
- The totality of the evidence shows Lieutenant Russell overreacted and used his pepper spray, not to maintain good order, but as an act of reprisal and to punish.

**<u>Opinion #2</u>**

The use of pepper spray in this case was also excessive force due to:

- The plaintiff not being treated in a humane manner,
- Timely access to water to flush out the plaintiff's eyes, face, and other exposed skin was unnecessarily and excessively delayed causing the plaintiff to suffer the burning effects of the pepper spray for days,
- The plaintiff was not given fresh clothing. The plaintiff had to wear clothing contaminated with pepper spray for days causing him to further suffer,
- The plaintiff was not allowed to shower for three days after he received a considerable dose of directed pepper spray even though the responding nurse

2

- charted showering should be considered to decontaminate the effects of the pepper spray. Being denied a shower to thoroughly decontaminate the effects of the pepper spray caused the plaintiff to suffer for days,
- The correctional staff displayed a conscious disregard for the health and safety of the plaintiff by not allowing him to properly decontaminate the burning effects of the pepper spray for days. The correctional staff knew the plaintiff was suffering, they knew it at that time, yet they did nothing about it.

Doc. 76-1, pp. 5-7.

Mr. Russell now moves to strike Mr. Lichten's opinion.

## II. STANDARD

"Federal Rule of Evidence 702 permits a qualified expert to give opinion testimony if the expert's specialized knowledge would allow the jury to better understand the evidence or decide a fact in issue." *Lee v. Anderson*, 616 F.3d 803, 808 (8th Cir. 2010). "The touchstone for the admissibility of expert testimony is whether it will assist or be helpful to the trier of fact." *Id.* (quotation marks and citation omitted). "[D]oubts regarding whether an expert's testimony will be useful should generally be resolved in favor of admissibility." *Clark By & Through Clark v. Heidrick*, 150 F.3d 912, 915 (8th Cir. 1998).

## III. ANALYSIS

Mr. Russell argues that the Court should strike Mr. Lichten's report for four reasons:

1. Mr. Lichten's opinion that the use of pepper spray was "unreasonable" and "excessive" is an improper legal conclusion;

2. Mr. Lichten's opinion that the use of pepper spray was "unreasonable" and "excessive" addresses a question that the jury is able to answer without the benefit of expert opinion;

3. Mr. Lichten failed to consider all of the evidence pertaining to his opinion; and

4. Mr. Lichten is not qualified to render an opinion about Officer Russell's conduct because Mr. Lichten has little or no experience in the field of correctional center procedures.

The Court addresses these arguments in turn.

### a. Whether Mr. Lichten's Opinions Constitute Improper Legal Conclusions

Because Mr. Cothran is a convicted prisoner, rather than a pretrial detainee, his claim arises under the Eighth Amendment. To establish excessive use of force under the Eighth Amendment, Mr. Cothran must show that "the force used was excessive and applied maliciously and sadistically for the purpose of causing harm and not in a good faith effort to achieve a legitimate purpose . . . ." Eighth Circuit Model Jury Instructions, § 4.42. Unlike a Fourth Amendment claim, an Eighth Amendment excessive-use-of-force claim does not turn on whether the use of force was reasonable. *See Peters v. Woodbury Cty., Iowa*, 979 F. Supp. 2d 901, 920–21 (N.D. Iowa 2013) (discussing difference in standards between excessive-force claims under Fourth Amendment and those under Eighth Amendment), *aff'd sub nom. Peters v. Risdal*, 786 F.3d 1095 (8th Cir. 2015).

Mr. Russell argues that Mr. Lichten's opinions that use of the pepper spray was "unreasonable" and "excessive" are inadmissible legal conclusions. Under the Federal Rules of Evidence, "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704. Nonetheless, "[a] trial court may . . . exclude opinion testimony if it is so couched in legal conclusions that it supplies the fact finder with no information other than what the witness believes the verdict should be." *Williams v. Wal-Mart Stores, Inc.*, 922 F.2d 1357, 1360 (8th Cir. 1990). "Opinions that 'merely tell the jury what result to reach' are not admissible." *Lee v. Anderson*, 616 F.3d at 809 (quoting Fed. R. Evid. 704 advisory committee's note).

The Court finds that the "unreasonable" and "excessive force" language does not constitute an impermissible legal conclusion. First, while the terms "excessive force" and even "objectively unreasonable" might be characterized as statements of the applicable legal standard,[1] the terms also have a simple, lay meaning. "Where, as here, the word also has an everyday meaning, the

---

[1] The Court takes no position in this order as to whether the objective reasonableness of Mr. Russell's conduct is relevant, an issue not raised by Mr. Russell.

testimony should not be excluded as constituting a legal conclusion." *Richman v. Sheahan*, 415 F. Supp. 2d 929, 947–48 (N.D. Ill. 2006); *see also Peters*, 979 F. Supp. 2d at 925 (concluding that expert "could permissibly testify as to what routine and acceptable correctional practices in jails are, based on his training and expertise as a correctional administrator and instructor" and could respond to abstract or hypothetical questions by opining that the force described was or was not reasonable in the circumstances described in the question, and would even be permitted to opine as to whether he personally believed that the force used against Peters was reasonable under the circumstances, but he would not be allowed to opine that the use of force satisfied the legal standard of "reasonableness"); *cf. Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir. 1995) (finding impermissible expert opinion that officer's conduct was reasonable "in light of Fourth Amendment standards"); *Clay v. Woodbury Cty.*, Iowa, 982 F. Supp. 2d 904, 918 (N.D. Iowa 2013) ("To the extent that [expert']s references to 'reasonableness' are opinions purportedly cast in terms of the applicable legal standard, they are inadmissible."). Second, Defendant's counsel acknowledged at oral argument that the question of whether the force Mr. Russell used was excessive is a factual issue that the jury must decide, rather than a purely legal issue. Third, Mr. Lichten provided an explanation as to how he reached his opinion. *Cf. Schmidt v. City of Bella Villa*, 557 F.3d 564, 570 (8th Cir. 2009) (finding that report that "consisted of . . . opinions regarding the overall reasonableness of the procedures used" and was "devoid of any standards and explanations that would assist the trier of fact in contextualizing his opinions" were "not fact-based opinions," and therefore finding no abuse of discretion in district court's refusal to admit testimony).

For these reasons, the Court will not strike Mr. Lichten's opinion as an impermissible legal conclusion.

### b. Whether Mr. Lichten's Opinions Address Questions That the Jury Is Able to Answer Without the Aid of the Opinions

Expert testimony is admissible only "if it 'assists the trier of fact to understand the evidence or determine a fact in issue.'" *Estes v. Moore*, 993 F.2d 161, 163 (8th Cir. 1993) (quoting Fed. R. Evid. 702). Mr. Russell argues that Mr. Lichten's opinions concern matters that the jury is capable of assessing without expert input, and the opinion therefore would only tell the jury what result to reach.

Mr. Lichten's testimony concerning use of force in correctional centers—a subject with which the average juror is not likely to be familiar—is likely to be of use to the jury. *See Peters*, 979 F. Supp. 2d at 922 ("I agree with the defendants that police or jail standards, practices, and procedures are matters outside the scope of most lay jurors' knowledge or experience, so that expert testimony about them is likely to be helpful to the jurors, and, thus, satisfies the 'basic rule' or the 'touchstone' of relevancy."). Indeed, federal courts routinely permit experts to present opinions concerning standard or appropriate correctional procedures. *See Wade v. Haynes*, 63 F.2d 778, 784 (8th Cir. 1981), *aff'd sub nom. Smith v. Wade*, 461 U.S. 30, 103 S. Ct. 1625, 75 L. Ed. 2d 632 (1983) (holding that "the jury had the right to be informed concerning prison policy and to consider evidence as to whether the failure to review the background of prisoners in making cell assignments amounted to a breach affecting their personal safety" and concluding that the trial court's admission of the expert's testimony was not an abuse of discretion or manifestly erroneous); *Coleman v. Rieck*, 154 F. App'x 546, 548–49 (8th Cir. 2005) (affirming denial of motion for judgment as a matter of law, noting that, *inter alia*, "the testimony from the[] [officers'] expert that the force did not exceed national standards[] supported the verdict that the force used was not excessive"); *Littlewind v. Rayl*, 839 F. Supp. 1369, 1371 (D.N.D. 1993) (describing expert who "testified . . . regarding the use of force in correctional facilities"); *see also, e.g., Ramsey v.*

*St. Charles Cty.*, No. 15-00776 JAR, 2017 WL 2843574, at *3 (E.D. Mo. June 30, 2017) ("According to Plaintiff's own expert, the SCCDOC policies regarding use of force, restraints, and pepper spray appear to be constitutional, as they comply with correctional industry standards."); *Fox v. Schneider*, No. 10-1138 MLM, 2012 WL 2918457, at *2 (E.D. Mo. July 17, 2012) ("Plaintiff's expert . . . testified in his deposition that reports of inmate on inmate assault at the SLCRC occurred because of failures to conduct safety checks according to policy."). The Court thus finds the argument that Mr. Lichten's testimony necessarily would not be helpful to the jury unconvincing.

### c. Whether Mr. Lichten's Purported Failure to Consider All of the Evidence Warrants Striking His Opinions

In order to formulate his opinion, Mr. Lichten reviewed, among other things, a DVD of the incident produced by DOC, violation summaries produced by DOC, and applicable DOC policies. Nonetheless, Mr. Russell insists that the Court should strike Mr. Lichten's opinion because he "never reviewed" Mr. Russell's deposition or that of Sherie Korneman, the Warden of WMCC, and because he has never been to WMCC. However, Mr. Cothran points out that when Mr. Lichten's report was provided to Defendant's counsel, Mr. Russell and Ms. Korneman had not yet been deposed. Those purported omissions thus obviously cannot be grounds for striking the expert opinions.

To the extent that Mr. Lichten's understanding of the evidence is contradicted by the testimony of either Mr. Russell or Ms. Korneman, or the prison investigators' "Use of Force Summary," it will be for the jury, and not the Court, to weigh all of the evidence and reach factual conclusions. In other words, whether "Lichten has ignored the safety and security threat that Officer Russell faced," as Defendant claims, is for the jury alone to decide, and the fact that Defendant's position is inconsistent with Mr. Lichten's understanding of the facts does not render

Mr. Lichten's testimony unreliable. *See Richman*, 415 F. Supp. 2d at 942 ("Experts routinely base their opinions on assumptions that are necessarily at odds with their adversary's view of the evidence. That does not mean that the expert has made impermissible credibility determinations that preclude him from testifying. If an expert could not base his opinion on assumptions—which in turn are based on testimony—there could be little meaningful and informative expert testimony in any case in which there was a divergence of testimony. The question is not whether the opinion is based on assumptions, but whether there is some factual support for them. . . . If there is, it is for the jury, properly instructed, to determine the credibility of the witnesses and thus the weight to be given to the expert opinion.").

Mr. Russell does not explain how Mr. Lichten's not having visited WMCC rendered his opinion unreliable. In any event, this argument, like the one discussed above, goes to the weight, rather than the admissibility, of the testimony, and therefore is not a basis for striking Mr. Lichten's testimony.

### d. Whether Mr. Lichten Is Qualified To Render an Opinion on the Correctional Center Procedures

Mr. Russell's final argument is that Mr. Lichten is not qualified to render an opinion in this case because his experience is "in the area of police use of force in patrol and in the jails," rather than a correctional officer's use of force. However, Mr. Lichten's report indicates that he has broad use-of-force expertise. Mr. Lichten earned the designation of "Certified Litigation Specialist" from Americans for Effective Law Enforcement after completing "litigation-related required training in", *inter alia*, "Lethal and Less Lethal Use of Force," "Management, Oversight, and Monitoring of Use of Force," and "Discipline and Internal Investigations." Doc. 76-1, p. 3. He also recently completed an attorney-sponsored webinar titled, "De-Escalation – What Does This Mean? Use of Force Policy Development and Training Standard." *Id.*, p. 4. Despite having

had the benefit of discovery, Mr. Russell does not suggest that these use-of-force-related courses were specific to jails, rather than prisons. Mr. Lichten also has experience with administrative segregation units—the type of prison unit in which Mr. Cothran was confined at the time of the incident at issue. *See id.* ("As a jail sergeant and lieutenant, I have experience in developing and/or overseeing jail policies and procedures. These include, but are not limited to . . . classification process (including upgrading inmate security levels to administrative segregation . . . .)").

Thus, if there are relevant factual differences between using force in prisons and using force in jails, they are not apparent in the record before the Court. Moreover, any such differences would go to the weight, rather than the admissibility, of Mr. Lichten's opinions and therefore are not appropriate grounds for striking his opinions.

## IV.   CONCLUSION

For the reasons discussed above, Defendant's motion to strike Mr. Cothran's expert report and opinion is DENIED.

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated:  February 25, 2019  
Jefferson City, Missouri

9