# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| DEANDRE JEROD COTHRAN<br><br>Plaintiff,<br><br>v.<br><br>JAMES RUSSELL,<br><br>Defendant. | No. 2:17-cv-04012 NKL |

**ORDER**

Defendant James Russell moves, for the second time, for summary judgment on plaintiff DeAndre Cothran's claim for violation of his right to be free from excessive force under the Eighth Amendment to the United States Constitution. Mr. Cothran's claim revolves around Mr. Russell's shooting of pepper spray into a cell in which Mr. Cothran was confined. For the reasons discussed below, the Court again denies Mr. Russell's motion for summary judgment.

## I.   FACTUAL BACKGROUND

On April 24, 2016, Mr. Cothran, a Missouri Department of Corrections inmate, was confined in a cell in the wing including the Administration Segregation Unit ("Ad Seg") of the Western Missouri Correctional Center. Plaintiff's Response to Defendant's Statement of Facts (Doc. 89), p. 2. Mr. Cothran shared that cell with another inmate, Dywon Newell. *Id.*, p. 3.

Mr. Russell was a correctional officer assigned to Ad Seg when, around 8:00 p.m., Mr. Newell twice struck the door of his cell in an effort to secure Mr. Russell's attention to request that Mr. Russell turn the lights on in his and Mr. Cothran's cell. *Id.*, pp. 2-3. Mr. Russell claims that the cell door was "shaking," and that, in his experience, this presented a "security threat." *Id.*, p. 4. Mr. Cothran denies that the cell door shook. *Id.* There is no dispute that Mr. Cothran himself

was not kicking his cell door or otherwise causing a disturbance. Responses to Plaintiff's Additional Facts (Doc. 93), p. 2. Mr. Cothran has stated that he then heard Mr. Russell, who had been speaking to another inmate, say something to the effect of, "Wait a minute, I got to go spray somebody." Doc. 89, p. 5. However, Mr. Russell has denied saying anything of the kind. Deposition of James Lester Russell, dated November 28, 2018 (Doc. 78-3), Tr. 94:19-24. Mr. Russell then walked across the wing to Mr. Cothran's cell, bent over, opened the food port of the cell door, and shot pepper spray directly into the cell. Doc. 89, pp. 5-6. Mr. Cothran maintains that Mr. Russell pushed Mr. Newell aside and intentionally directed the pepper spray at Mr. Cothran, without warning. *Id.*, p. 6. Mr. Russell denies that he intentionally directed the spray at Mr. Cothran, but he concedes that, had he done so, it would have constituted excessive use of force. Doc. 93, p. 2.

After shooting the pepper spray, Mr. Russell "immediately walked away from" Mr. Cothran's cell and left the Ad Seg wing. Doc. 89, p. 6.

Mr. Cothran was left in a cell without functioning water facilities for several days. Doc. 93, p. 3. Mr. Russell denies that Mr. Cothran suffered pain and suffering as the result of being pepper sprayed. *Id.*, pp. 2-3.

Mr. Russell subsequently retired from the Missouri Department of Corrections during a pending investigation into allegedly unprofessional conduct during a use of force. *Id.*, p. 3.

## II. STANDARD

Summary judgment is warranted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must determine whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either

party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511 (1986).

The Court must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." *Scott v. Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 1774 (2007) (quotation marks and citation omitted).

## III. ANALYSIS

Mr. Russell's second motion for summary judgment is based on the same premises as the first: the arguments that Mr. Cothran failed to establish an excessive force claim against Mr. Russell and that Mr. Russell is entitled to qualified immunity. Doc. 35.

### a. Whether the Undisputed Evidence Establishes as a Matter of Law that There Was No Constitutional Violation

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6–7, 112 S. Ct. 995, 999 (1992). "[O]rdinary errors of judgment" do not rise to the level of an Eighth Amendment violation. *Whitley v. Albers*, 475 U.S. 312, 322, 106 S. Ct. 1078, 1086 (1986).

In its May 29, 2018 order denying the first summary judgment motion, the Court found that "genuine issues of material fact remain as to whether there was an objective need for force, the relationship between any such need and the amount of force used, the threat reasonably perceived by Defendant, any efforts by Defendant to temper the severity of his forceful response, and the extent of Plaintiff's injuries." Order, Doc. 54, p. 7. Among the disputed facts that the Court cited was the central question of whether Mr. Russell intentionally directed pepper spray at Mr. Cothran, who claimed that he had not presented a security threat or otherwise caused a

disturbance. The Court cited two cases in which the Eighth Circuit found the use of pepper spray to constitute excessive force:

> *See Treats* [*v. Morgan*], 308 F.3d [868,] 872 [(8th Cir. 2002)] (where a noncompliant inmate posed no threat, finding no objective need for the use of pepper spray where the record did not suggest that the inmate "would have remained noncompliant if [the officer] had given him clearer directions or issued a warning before spraying him in the face[]") (alteration added); *Walker v. Bowersox*, 526 F.3d 1186, 1189-90 (8th Cir. 2008) (finding an Eighth Amendment violation where, although the inmate refused three times to surrender a food tray and refused to move away from the food port, it was undisputed that the inmate was in his cell at the time of the incident, the corrections officer gave no warning before using pepper spray, the inmate was sprayed directly in the face with a large quantity of pepper spray, and the inmate was not allowed to shower or have clean clothes or bedding for three days).

*Id.*, pp. 6-7.

Mr. Russell argues that the evidence and case law establish as a matter of law that he cannot be found to have had malicious and sadistic intentions in pepper spraying Mr. Cothran. The only "new" fact to which Mr. Russell points in support of his second motion for summary judgment is video of the incident, which, according to Mr. Russell, shows that "after bending over to open the food port, Officer Russell spent no time aiming or directing the burst of pepper spray," and that he "administered the pepper spray for only one or two seconds" before walking away. Mr. Cothran argues that the video does not show "at whom Defendant directed the pepper spray." The video shows Mr. Russell only from behind when he is at the cell door. It does not make clear whether Mr. Russell shot pepper spray into the cell indiscriminately, or at Mr. Newell alone, or whether, as Mr. Cothran contends, Mr. Russell pushed Mr. Newell out of the way and sprayed Mr. Cothran directly. The question of whether Mr. Russell intentionally directed pepper spray at Mr. Cothran thus is an issue of material fact that cannot be resolved at the summary judgment stage.

Mr. Russell also argues that "the pepper spray came into [Mr. Cothran's] cell only at the level of his 'upper thigh,'" citing Mr. Cothran's deposition testimony. This statement

mischaracterizes Mr. Cothran's deposition testimony, which was that Mr. Russell sprayed him directly from the food port, which was at the level of his upper thigh. The cited portion of Mr. Cothran's testimony does not suggest that the pepper spray was not, for example, directed through the food port at Mr. Cothran's face or other especially sensitive parts of his body. There is no question that there is evidence of injury in this case. *Cf. Samuels v. Hawkins*, 157 F.3d 557, 558 (8th Cir. 1998) (finding that the throwing a cup of what was assumed to be water at an inmate, where there was "no evidence of damage of any kind," did not constitute cruel and unusual punishment). The fact that Mr. Cothran may have sustained no *serious* injuries is not determinative. *Hudson v. McMillian*, 503 U.S. 1, 4, 112 S. Ct. 995, 997 (1992) (answering "in the affirmative" the question of "whether the use of excessive physical force against a prisoner may constitute cruel and unusual punishment when the inmate does not suffer serious injury").

Mr. Russell also argues that summary judgment is now warranted because of certain "recent case law" he cites. *See* Doc. 78, p. 11 ("In the prior Order denying Defendant's Motion for Summary Judgment (Doc. # 54), the Court relied upon appellate decisions that, under the facts now before the Court and the more recent case law cited above, no longer justify denial of Defendant's motion."). The most recent decisions cited in his latest briefs were issued in 2016—some two years before he first moved for summary judgment on March 19, 2018. *See, generally,* Docs. 78, 93, and 35. Mr. Russell does not suggest that he could not have cited the 2016 cases in support of his first motion.

In any event, the cases on which Mr. Russell relies are not on point. Mr. Russell argues that *Ward v. Smith*, 844 F.3d 717 (8th Cir. 2016), in which the Eighth Circuit affirmed a lower court judgment concluding that the use of pepper spray did not constitute excessive force, establishes that Mr. Cothran's claim is meritless. However, *Ward* is distinguishable on various

5

grounds. As a preliminary matter, the appellate decision in *Ward* concerned a ruling following a *bench trial*, not a summary judgment motion. The judge in *Ward* was the fact-finder, free to make credibility determinations. *See, e.g., id.*, at 722 ("[T]he district court was permitted to credit Officer Smith's testimony that he was intending to direct the spray under the smock and toward Ward's face, as witness credibility determinations are within the exclusive domain of the district court and are virtually unreviewable on appeal."). Here, in contrast, the Court is obligated to reasonably construe all material factual disputes in the light most favorable to Mr. Cothran. *Scott*, 550 U.S. at 378, 127 S. Ct. at 1774. Thus, the Eighth Circuit's affirmance of the trial court's factual findings in *Ward* does not control here.

Defendant also notes that Ward was sprayed four times, while Mr. Cothran was sprayed just once, but Ward was sprayed, each time, only after he refused to submit to wrist restraints. *Ward*, 844 F.3d at 719-20; *see also id.*, at 722 ("[T]he district court found Officer Smith administered pepper spray only after Ward refused the direct orders to submit to wrist restraints and the use of force was necessary to gain Ward's compliance and maintain the safety and security of SCCC."). Here, in contrast, there is no dispute that Mr. Cothran had not been disruptive when Mr. Russell directed pepper spray into his cell. Doc. 93, p. 2. There also is some question as to whether Mr. Newell refused to comply with any directive issued by Mr. Russell. *See* Doc. 89, pp. 4-5; *cf. Ward*, 844 F.3d at 722 ("The evidence presented showed that when Ward finally complied with the orders, Officer Smith ceased using pepper spray."). Moreover, before spraying Ward the first time, the officer in question contacted medical staff to confirm that Ward had no medical condition that would prohibit the officer's use of pepper spray, and the officer also "received authorization from the shift supervisor" to use the spray. *Id.*, at 719. Here, in contrast, mere seconds elapsed between Mr. Russell's approach to the cell and his administration of pepper spray.

6

Defendant also points out that Ward was stripped of his clothing, but Ward was stripped for the purpose of a search, and he was given a "security smock" that he tied around himself. *Id.*, at 720. It is true that "[a]t least some of the spray made contact with Ward's bare genitals," but the officer claimed that he "was attempting to direct the spray underneath the security smock and towards Ward's face," and as the Eighth Circuit held, the district court was "permitted to credit Officer Smith's testimony" on this point. *Id.*, at 720, 722. Mr. Russell argues that Ward was sprayed for the purpose of punishment, but the only reference to punishment in the Eighth Circuit decision concerns the removal of "all personal items" from his cell.

Furthermore, as Mr. Russell himself points out, Mr. Ward had "access to running water" when he was returned to his cell (Doc. 78, p. 6), whereas Mr. Cothran purportedly was left in a cell without functioning water facilities for several days before he was allowed to wash off. *See* Exhibit H to Motion for Summary Judgment; Doc. 93, p. 3; *cf. Williams v. Benjamin,* 77 F.3d 756, 763 (4th Cir.1996) ("[P]rompt washing of the maced area of the body will usually provide immediate relief from pain.").

In context, and particularly in light of the fact that the *Ward* decision followed a bench trial, none of the aforementioned facts suggests that Mr. Russell's spraying of Mr. Cothran under the circumstances as described by Mr. Cothran was permissible under the Eighth Amendment.

*Jones v. Shields*, 207 F.3d 491 (8th Cir. 2000), also is inapplicable. In that case, the inmate himself acknowledged that the officer "administered capstun after [the inmate] refused a direct order from his supervisor and 'questioned' an order from [the supervisor], conduct which formed the basis for two disciplinary violations." *Id.*, at 497. The inmate "was neither handcuffed nor secured in any way during this encounter, and was apparently much larger than the officer." *Id*. The material that was administered, capstun, was described by an expert as a "water-soluble agent

7

composed of natural ingredients, the effects of which last no longer than 45 minutes in an extreme case." *Id.*, at 495. The inmate afterward was "twice taken to the infirmary and treated with water during that period," and "a medical examination the day after the incident revealed no lingering effects." *Id.* Here, in contrast, there is no dispute that Mr. Cothran was not "recalcitrant" like the inmate in *Jones* and that he was confined in a cell, and Defendant does not suggest that the effects of the pepper spray wore off in short order. Mr. Cothran was examined by a nurse just once, more than 20 minutes after Mr. Russell directed pepper spray into the cell, and Mr. Cothran supposedly had no access to functioning water facilities for several days after he was sprayed.

*Burns v. Eaton*, 752 F.3d 1136 (8th Cir. 2014), is similarly unavailing. That decision affirmed the grant of summary judgment in favor of the defendant where he used "a small amount of pepper spray" three times—once for each time the inmate threw an object or spit at the correctional officer—after the inmate was undisputedly warned that he would be sprayed if he did not comply with the officer's order. *Id.*, at 1139. Here, in contrast, there is no dispute that Mr. Cothran was, at all relevant times, not causing a disturbance, and there is a genuine issue of material fact as to whether Mr. Russell warned Mr. Cothran (or his cellmate) that he intended to administer pepper spray.

Indeed, the *Burns* decision notes that "the few cases where [the Eighth Circuit has] denied summary judgment in Eighth Amendment excessive force claims based on pepper spraying have involved no warning this force would be used, no apparent purpose other than inflicting pain, use of unnecessary "super-soaker" quantities of the chemical, refusal to allow the victim to wash off the painful chemical for days, and/or use of additional physical force. *Burns*, 752 F.3d at 1139–41 (citing cases). Here, the evidence could reasonably be construed as showing both "no warning" that pepper spray would be used and "no apparent purpose other than inflicting pain." In short,

this is precisely the type of case that the Eighth Circuit has declined to dismiss at the summary judgment stage.

Genuine disputes as to material issues of fact thus preclude summary judgment in Mr. Russell's favor on the issue of whether there was a constitutional violation.

### b. Whether Mr. Russell Is Entitled to Qualified Immunity

"'[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Winters v. Adams*, 254 F.3d 758, 766 (8th Cir. 2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982)). Thus, if the evidence cannot reasonably be viewed as showing that Mr. Russell violated a "clearly established" constitutional right of which a reasonable person would have known, the case against Mr. Russell must be dismissed.

As discussed above, the evidence could reasonably be viewed as establishing that Mr. Russell violated Mr. Cothran's rights under the Eighth Amendment. The question that remains is whether the rights were "clearly established."

In its order on Mr. Russell's first motion for summary judgment, the Court found that the constitutional right that allegedly was violated was "clearly established at the time of the alleged violation," as "a reasonable official would have understood that directly pepper spraying an inmate who was in his cell and posed no threat without first issuing a direct warning violated the inmate's constitutional rights under the Eighth Amendment." *Id.*, pp. 7-8.

Mr. Russell's only argument as to why the Court should reach a different result now is that the Eighth Circuit case law he newly cites indicates that "no reasonable prison guard would have suspected that Officer Russell's use of pepper spray violated the constitution." Doc. 78, p.14.

However, Mr. Russell has admitted that, if he did in fact intentionally direct pepper spray at Mr. Cothran, as Mr. Cothran alleges, that would have constituted excessive force. Doc. 93, p. 2. Mr. Russell's admission belies his claim that "no reasonable prison guard would have suspected that [his] use of pepper spray violated the constitution."

Moreover, as discussed above, none of the Eighth Circuit cases that Defendant now cites suggests that intentionally pepper-spraying a compliant inmate, without warning, is lawful. Indeed, the case law indicates otherwise. *See Burns*, 752 F.3d at 1139–41 (noting that the Eighth Circuit has denied summary judgment in cases involving pepper spray where there was "no warning this force would be used, no apparent purpose other than inflicting pain," or "refusal to allow the victim to wash off the painful chemical for days"). In short, Mr. Russel has cited neither any case law nor any evidence that warrants changing the Court's prior conclusion as to whether Mr. Russell is entitled to qualified immunity.

## IV. CONCLUSION

For the reasons discussed above, Defendant's motion for summary judgment is DENIED.

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated: February 26, 2019
Jefferson City, Missouri